BOB SKELLY v. STATE.

No. A-5676. Opinion Filed Feb. 16, 1927.
(253 Pac. 110.)

J. G. Ralls, for plaintiff in error.

The Attorney General, for the State.

DOYLE, P. J. Plaintiff in error, Bob Skelly, was tried and convicted on an information charging that in Atoka county, December 7, 1924, he did then and there willfully and unlawfully make and manufacture certain intoxicating liquor, to wit, whisky. In accordance with the verdict of the jury he was sentenced to pay a fine of $50 and to be confined in the county jail for 90 days. The only question presented for reversal is that the verdict is not sustained by the evidence.

The state relied for this conviction upon the testimony of three witnesses, Lacy Vaughan and his two sons, Howard and Ray Vaughan. All three of these witnesses testified in substance: That on Saturday night, December 6th, they were out possum hunting together and saw a light down in the hollow. The elder Vaughan was carrying a light, but he put it down and went to where they saw the light. That when they rode up a man came out of the gulch with a lantern from where he was and asked who they were. The elder Vaughan told him who he was and asked the man if he had any luck. The man with the lantern set it down and ran away. The three men then proceeded down in the gulch and found a still, some mash, and about half a gallon of whisky run off. The elder Vaughan testified:

"When I rode up this man here, Mr. Skelly, came out with a lantern. He asked me who I was, and before I told him I asked him if he had any luck, pretending like I thought he was out hunting so I could look

things over. I saw some one behind the brush with a gun, and I got off my horse. When I told Mr. Skelly who I was he turned, put the lantern down, said something to the fellow that was back of him, and they both ran away. We found a still and the whisky, which was still warm. I did not recognize the other man."

The other two witnesses positively identified the man with the lantern as being the defendant, Bob Skelly.

On his own behalf the defendant's brother, Dan Skelly, and J. L. McCutcheon, a visitor at Skelly's home, each testified that they were at the defendant's home that night, and that they all slept in the same room; that the defendant was sick and was up taking medicine frequently during the night, but did not leave the room between sundown and sunrise.

Verman Tate testified that he met the elder Vaughan Sunday morning just before daylight and asked him whose still it was, and Mr. Vaughan stated that he found the still, but did not know who it belonged to.

In rebuttal, the elder Vaughan testified that as he passed witness Tate's home that morning Tate called to him and he stopped, and Tate asked him who the still belonged to, and he told Tate it was Bob Skelly's; "that the other person ran off"; that he did not say to Tate that he did not know who the still belonged to.

In support of the supplemental motion for a new trial the affidavit of several witnesses who made experiment was to the effect that it would be a physical impossibility to identify a person under the circumstances related by the state's witnesses. It is insisted that the identification of the defendant by the state's witnesses was in direct contravention of physical laws; that where the circumstances related by the witnesses are such that their testimony relating thereto is wholly

improbable, the same should be disregarded. Counsel in his brief says:

"Viewing this testimony in the face of the positive testimony of the two witnesses for the defendant, and the defendant himself, it falls far short of being sufficient to establish the guilt of the defendant; that no effort was made to show that the defendant had purchased any of the necessary ingredients for making whisky, and no evidence was offered tending to connect the defendant with the operation of the still."

The credibility of the testimony of the defendant and the witnesses testifying in his behalf is the exclusive province of the jury to determine. The jury had the right to consider all the circumstances as well as the facts proven in the case, and it was their province to say which set of witnesses they would believe, or as to which set was corroborated by the circumstances in the case.

It is the settled rule in cases of this character that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence, unless it clearly appears that the verdict is so palpably against the weight of the evidence as to induce the belief that it was reached as the result of passion or prejudice on the part of the jury returning the verdict.

In the record before us there is nothing to indicate that the verdict of the jury was reached as the result of passion, prejudice or partiality. Wherefore the judgment herein is affirmed.

EDWARDS and DAVENPORT, JJ., concur.